UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON SERRANO,<br><br>　　　　　　　　　Plaintiff,<br><br>— against —<br><br>THE CITY OF NEW YORK, KYLE ERICKSON, and ELMER PASTRAN,<br><br>　　　　　　　　　Defendants. | Case No. 22-cv-1989<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Jason Serrano ("Plaintiff" or "Mr. Serrano") files this action against Defendants Kyle Erickson and Elmer Pastran (the "Individual Defendants"), each in his individual capacity; and the City of New York; and alleges as follows:

## NATURE OF THE ACTION

1. Mr. Serrano brings this action under New York state law and under 42 U.S.C. § 1983 to recover damages relating to his false arrest, malicious prosecution, and denial of a fair trial.

2. Elmer Pastran and Kyle Erickson planted drugs on Mr. Serrano, the exact same thing they did to other Lasou Kuyateh just weeks earlier.

3. If not for body-worn camera footage and the persistence of his criminal defense attorneys, Mr. Serrano would have a conviction on his record to this day arising out of an illegal traffic stop.

4. Mr. Serrano spent three days shackled to a hospital bed due to the officers' malfeasance, months on supervised release, hours in court, and three years

with a misdemeanor guilty plea on his record because the officers planted drugs on him.

5. He brings this action to recover damages for their egregious and malicious wrongdoing.

## JURISDICTION AND VENUE

6. This action arises under 42 U.S.C. §§ 1983 and 1988 and the laws of the State of New York.

7. Jurisdiction lies in this Court under its federal question and civil rights jurisdiction, 28 U.S.C. §§ 1331 and 1343.

8. Pendant jurisdiction over the state law claims lies under 28 U.S.C. § 1367.

9. Venue is proper in this Court under 28 U.S.C. § 1391 because Plaintiff's claims arose within the Eastern District of New York.

## PARTIES

10. Plaintiff Jason Serrano is a resident of Staten Island, New York and a citizen of the United States.

11. Defendant Kyle Erickson was an officer in the New York City Police Department, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

12. Defendant Elmer Pastran is an officer in the New York City Police Department, who at all relevant times acted under color of state law, and who is sued in his individual capacity.

13. Defendant City of New York is a municipal corporation existing under the laws of the State of New York.

## GENERAL ALLEGATIONS

14. In March 2018, Jason Serrano was arrested during a traffic stop in which the officers unlawfully arrested him, planted marijuana in a car, and later claimed to have found a bag of crack cocaine in his jacket.

15. The car, in which he was a passenger, was purportedly stopped as a result of a broken taillight.

16. Immediately upon approaching the car, the Defendants accused the Plaintiff of smelling like marijuana and claimed to smell a strong odor of marijuana emanating from the vehicle. There was no such smell.

17. The officers then demanded Mr. Serrano, who had recently been stabbed, get out of the car.

18. Mr. Serrano showed the officers his injuries in order to demonstrate that getting out of the vehicle would be difficult. The officers still demanded he get out of the vehicle.

19. When Mr. Serrano got out of the vehicle, he picked up his jacket, as he was cold and wanted to put it on.

20. The officers asked him to "do them a favor" and hand it to them. Mr. Serrano, who wanted to put it on, did not want to do them that favor, and showed them that there was nothing in the jacket.

21. The officers then cuffed Mr. Serrano and took him down to the ground.

22. Mr. Serrano relented to the unlawful arrest.

23. The officers then began to search the vehicle, looking for contraband to justify their illegal seizure.

24. Defendant Erickson searched the vehicle, and when he could not find any contraband, he returned to Defendant Pastran and said he could not find anything but that they "had to find something."

25. In order to "find" something, Erickson decided to plant marijuana in the car.

26. After finding nothing, Erickson attempts to shut off his body worn camera, and even makes a show for the other officers' cameras, exclaiming that "it went off."

27. It had not gone off, and had Erickson actually managed to turn it off, evidence that he plants evidence on innocent citizens might not exist.

28. Erickson is seen on his body worn camera placing marijuana in the car.

29. Later in the video he "finds" the marijuana, and announces that he's "gonna grab the little bit of weed."

30. The officers also discussed not giving the driver a summons, because she was "very cooperative."

31. Officer Erickson, however, makes clear they "should" because of the "whole situation," namely that they had illegally searched the vehicle, illegally arrested Mr. Serrano, and planted marijuana in the vehicle.

32. Defendants are very cognizant of attempting to evade the detection of their body worn cameras. At one point, Defendant Erickson can be heard telling the other officers "he's live."

33. Officer Erickson can then be heard joking that he has to hold onto the planted marijuana.

34. Officer Pastran then can be heard saying "I'm killing mine" in reference to his body worn camera.

35. Officer Erickson follows saying "turning completely off."

36. The officers had stored the marijuana in their vehicle.

37. Florets of marijuana can be seen on the floor of the vehicle when they return to the vehicle, before turning off their body worn cameras.

38. Mr. Serrano was held at a hospital, chained to a hospital bed, for over three days after the arrest.

39. He was arraigned on day three.

40. He was charged with obstructing governmental administration, resisting arrest, possession of marijuana, and possession of crack cocaine.

41. He was placed on supervised release as a result of those charges and had to attend in person and phone check ins with the supervised release program.

42. He was innocent of all charges and the drugs had been planted on him by the officers.

43. On June 18, 2018, Mr. Serrano attended a court hearing with his counsel.

44. He had missed a supervised release session but appeared at the hearing nonetheless.

45. At that hearing, the people also offered a plea to a violation of New York Penal Law 205.30, resisting arrest, and five days in jail, and requested bail of $1,000.

46. Mr. Serrano intended to reject the offer of the plea, because he was innocent of the charges.

47. The judge set bail however, which Mr. Serrano could not pay, and set his next court date three days from the court date.

48. Functionally, Mr. Serrano was being asked to plea and go home, or serve three days in jail for a crime he did not commit.

49. Mr. Serrano, without the benefit of the exculpatory evidence showing the officers' numerous misdeeds, decided he wanted to plea rather than go to Rikers.  Mr. Serrano was ultimately allowed to plea to resisting and was able to go home.

50. He was held in the courthouse for hours until it could be determined that he had served the necessary time to be released from court directly that day.

51. In June 2020, with the benefit of the clearly exculpatory body-worn camera footage, Mr. Serrano moved to vacate his conviction.

52. The Staten Island District Attorney's Office opposed and defended the conviction.

53. On October 29, 2021, his conviction was vacated by Judge Tamiko Amaker in the Criminal Court of Richmond County.

54. The charges were dismissed and sealed on November 9, 2021.

55. Mr. Serrano then filed a notice of claim with the City of New York, which did not schedule a 50-h hearing pursuant to state law.

## FIRST CAUSE OF ACTION

FALSE ARREST, EXCESSIVE PREARRAIGNMENT DETENTION,
AND MALICIOUS PROSECUTION
UNDER NEW YORK STATE LAW AND
THE FOURTH AMENDMENT AND 42 U.S.C. SECTION 1983
(Against Defendants Serrano and Pastran)

56. Plaintiff repeats and re-alleges each and every allegation set forth above.

57. Acting individually and in concert, the Police Defendants deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free of unreasonable search and seizure and to their liberty by detaining, searching, arresting, confining, causing the confinement, and/or continuing the confinement of Plaintiffs without any privilege to do so.

58. All alleged probable cause to arrest in this action was based on fabrication by the Defendant officers.

59. The officers further caused Mr. Serrano to be detained for more than 48 hours pre-arraignment in violation of state and Federal law,

60. Because Mr. Serrano pled to time served, he had no cause of action for false arrest until the conviction was overturned.

61. Plaintiff was conscious of his confinement and did not consent to it.

62. Post-arraignment, he was subject to pretrial supervision and forced to appear in court for a crime he did not commit.

63. After pleading guilty, Plaintiff was held in corrections custody at while corrections calculated his sentence. He was not released from corrections custody until the sentence was calculated.

64. Mr. Serrano suffered emotional, reputational, and economic damages as a result of the conviction.

## SECOND CAUSE OF ACTION

DENIAL OF DUE PROCESS AND A FAIR TRIAL
UNDER THE FIFTH AND FOURTEENTH AMENDMENTS
AND 42 U.S.C. SECTION 1983

(Against Defendants Erickson and Pastran)

65. Plaintiff repeats and realleges each and every allegation set forth above.

66. At all times, the Defendants were acting under color of State law.

67. The Fifth and Fourteenth Amendments protect the right to be given a fair trial and not to have false evidence presented against you.

68. Mr. Erickson and Mr. Pastran planted evidence on Mr. Serrano.

69. On March 14th, 2020, Mr. Pastran and Mr. Erickson forwarded that fabricated evidence to prosecutors in the form of planted physical evidence and false written statements.

70. But for forwarding the fabricated evidence on March 14th, 2020, Mr. Serrano would not have been arraigned on charges and would have been released from police custody at the hospital.

71. Together, by forwarding false information to the prosecutors that was likely to influence a jury verdict, the Defendants deprived the Plaintiff of his liberty and property.

**THIRD CAUSE OF ACTION**

MUNICIPAL LIABILITY FOR DENIAL OF DUE PROCESS AND A FAIR TRIAL
UNDER THE FIFTH AND FOURTEENTH AMENDMENTS
AND 42 U.S.C. SECTION 1983 AND UNDER A THEORY OF *RESPONDEAT SUPERIOR AS TO THE STATE LAW CLAIMS*

(Against the City of New York)

72. Plaintiff repeats and realleges each and every allegation set forth above.

73. Defendant the City of New York maintains a custom and policy of failing to discipline police officers who provide false testimony in sworn charging documents, which caused Mr. Serrano to suffer the loss of liberty described in this Complaint.

74. In June 2018, NYPD Commissioner James P. O'Neill appointed an independent panel to conduct a review of the NYPD's internal discipline system. The

panel consists of the Honorable Mary Jo White, its chair; the Honorable Robert L. Capers; and the Honorable Barbara S. Jones.

75. That panel found that the NYPD's internal processes encourage and condone false statements.

76. First, while patrol guide §203-08 requires dismissal for making an intentional false statement, officers are almost never charged under this section and are instead charged under provisions that tolerate their behavior.

77. Second, even where officers were found to have violated § 203-08, the Department's trial commissioners recommended punishments that allowed officers to remain employed despite the presumptive dismissal penalty.

78. Indeed, the City's Commission to Combat Police Corruption has recommended that the NYPD charge under §203-08, but the Department refuses to do so.

79. Third, the panel noted that the practice of "handing off" arrests for administrative convenience leads to false testimony from officers, who claim to have witnessed all facts in a case, when in fact, they did not.  This practice allows certain officers to earn overtime, but according to police supervisors, tolerating "this practice…promotes a culture in which more egregious falsehoods occur."

80. Prosecutors in the five New York City District Attorneys' offices take pains to protect officers they know to be frequent fabricators.  In one instance in Staten Island, for example, an ADA dismissed a case in order not to "burn" one of the

police officers' from revealing his false statements.  No case was brought against that officer for perjury.

81. The practice of "testilying" has become so ingrained in the NYPD that it spawned that neologism.  There are never consequences for those officers.  The New York Times reported on a similar instance in the Bronx, where officers lied about a search that happened in a New York City, claiming that they moved a laundry bag in a hallway and felt a heavy thud inside it as they moved it.  That never happened.  When video disproving the incident was found, the case was dropped, but the police officers were not charged for their perjury.  The Times reviewed 25 other cases with similar testilying issues.[1]

82. Erickson and Pastran, repeatedly planted marijuana on citizens without any punishment, in keeping with this pattern and practice.

83. The culture of fabricating evidence and testilying created by the failure to discipline officers for their false testimony has caused NYPD officers throughout the city to make up events and charges.

84. Officer Pastran still remains on the force despite his clear participation in repeated instances of evidence fabrication.

85. Officer Erickson was allowed to retire. He was not terminated.

86. Indeed, Officer Pastran was the one who fabricated evidence in statements made to the DA in this case in addition to Officer Erickson's misdeeds.

---

[1] https://www.nytimes.com/2018/03/18/nyregion/testilying-police-perjury-new-york.html

87. Despite the obviousness of the crime, the NYPD and the Staten Island District Attorney steadfastly denied that there was any wrongdoing, keeping with their pattern and practice of refusing to discipline NYPD officers for even the most obvious criminal acts and fabrications.

88. Indeed, even after video of the evidence was released, the Staten Island District Attorney defended the conviction and never pursued charges against Defendants.

89. The City's failure to do even rudimentary discipline for criminal acts of fabricating evidence caused the unconstitutional and criminal activity of its officers, leading to Mr. Serrano's loss of liberty.

90. Mr. Erickson and Mr. Pastran might have gone completely unpunished – and Mr. Serrano's innocence never vindicated – unless Mr. Erickson had not been caught planting marijuana in another car just two weeks prior to this incident.

91. The modus operandi was strikingly similar. In that incident, Mr. Pastran and Mr. Erickson do not find any marijuana after searching the vehicle. In that incident, Mr. Erickson's camera shuts off for a period of time. And finally, in that incident, Mr. Erickson magically finds marijuana that was clearly not visible in the first search of the vehicle.

92. Police and prosecutors did nothing in response to Mr. Erickson and Mr. Pastran's coordinated actions to plant marijuana on innocent people, in order to justify arresting them, even after multiple instances of criminality were caught on video.

93. The City of New York and the two officers recently settled that case in this Court.

94. The Staten Island District Attorney's Office refused to prosecute Mr. Erickson and Mr. Pastran for their criminal misconduct.

95. The NYPD ratified the behavior. Both officers were cleared following a "thorough investigation," according to NYPD spokesperson Phillip Walzak. The investigation determined that there was "no evidence that the officers conducted anything but a lawful stop, performed a consensual search, and had probable cause to arrest the defendant."

96. On January 4, 2018, PO Erickson had a discrepancy on an invoice for marijuana and an incomplete or inaccurate property clerk invoice. He received a slap on the wrist for that discrepancy.

97. That discrepancy was the marijuana Erickson used to plant on Mr. Kuyateh and Plaintiff.

98. The City of New York, through its police department and the Staten Island District Attorney, were on notice of Erickson and Pastran's penchant for planting evidence and failed to discipline the officers, evincing deliberate indifference to the rights of New Yorkers.

99. The City of New York has further exhibited deliberate indifference to the rights of New Yorkers by keeping officers like Mr. Erickson and Mr. Pastran on the police force despite evidence of criminal wrongdoing.

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

- a. For compensatory damages of not less than $500,000;
- b. For punitive damages;
- c. For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. $ 1988 and to the inherent powers of this Court;
- d. For pre-judgment interest as allowed by law; and
- e. For such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 7, 2022

WERTHEIMER LLC

Joel A. Wertheimer
14 Wall Street, Suite 1603
New York, New York 10005
(646) 720-1098
joel@joelwertheimer.com